## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTHONY W.,

                Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

Case No. 20 C 6209

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony W.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income Benefits. Anthony asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Anthony has worked as an automobile salesperson, a home appliance salesperson, a contractor, and a cook. (R. 23, 65, 68, 78). Anthony's health issues began in October 2017 when he presented to the emergency room with left groin pain that was aggravated by movement. *Id.* at 331. A CT scan of Anthony's abdomen and pelvis showed signs of diverticulitis. *Id.* at 347. Anthony returned to the emergency room two additional times in late 2017 with similar complaints

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or alternatively, by first name.

of abdomen and left leg pain. *Id.* at 351-353, 383-386. Anthony was diagnosed with extensive diverticular disease of the sigmoid colon, which is consistent with diverticulitis. *Id.* at 359. Diverticulitis is the infection or inflammation of the intestine.[2] As a result, Anthony had a laparoscopic left colectomy with a diverting loop descending colostomy in January 2018. *Id.* at 552. A colectomy is a surgical procedure to remove all or part of the colon where the end of the colon is brought through the abdominal wall to form an opening that drains into a bag or pouch attached to the abdomen.[3] In addition to his digestive issues, Anthony presented with mental health concerns, including anxiety and depression, in 2019. *Id.* at 743, 748, 750, 752, 759, 766.

Anthony applied for disability insurance benefits on February 21, 2018, alleging disability beginning October 26, 2017, when he was 56 years old. *Id.* at 66. Anthony's claim was initially denied on May 31, 2018, and upon reconsideration on September 26, 2018. *Id*. at 110. Upon Anthony' written request for a hearing, he appeared and testified at a hearing held on July 8, 2019 before ALJ Deborah M. Giesen. *Id.* at 31-64. At the hearing, the ALJ heard testimony from Anthony and a vocational expert, Richard T. Fisher. *Id.*

On September 13, 2019, the ALJ issued a decision denying Anthony's application for disability benefits and supplemental security income. *Id.* at 13-24. The opinion followed the required five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Anthony had not engaged in substantial gainful activity since October 16, 2017, the alleged onset date. *Id.* at 15. At step two, the ALJ found that Anthony had the severe impairments of status post colectomy and colostomy for diverticulitis and iliopsoas abscess, obesity, and degenerative

---

[2] Web MD, *What is Diverticulitis,* September 16, 2021, https://www.webmd.com/digestive-disorders/understanding-diverticulitis-basics.

[3] John Hopkins Medicine, *Colostomy,* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/colostomy.

disc disease of the lumbar spine. *Id.* At step three, the ALJ determined that Anthony did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925, and 416.026). *Id.* at 17.

The ALJ then concluded that Anthony retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(a), except: he can frequently climb ramps, stairs, stoop, kneel, crouch, crawl, and occasionally climb ladders, ropes, or scaffolds. *Id.* at 19. Based on this RFC, the ALJ determined at step four that Anthony could perform his past relevant work as an automobile salesperson and household appliance salesperson. *Id.* at 23. Because of this determination, the ALJ found that Anthony was not disabled. *Id.* at 24. The Appeals Council denied Anthony's request for review on September 13, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education,

and work experience. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 (7th Cir. 1985). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Nonetheless, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

The ALJ found Anthony not disabled at step four of the sequential analysis because he retains the RFC to perform his past relevant work as an automobile salesperson (skilled job), and household appliance salesperson (semi-skilled job). Anthony argues that the ALJ's RFC is erroneous because the ALJ did not account for the functional limiting effects the ALJ found at step two in the RFC assessment. Doc. [17] at 10. The Court agrees.[4] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

---

[4] Because the Court remands on this basis, the Court does not address Anthony's other arguments.

If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which includes the category of "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)); *see also Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018). These functional areas are known as the "B criteria." *Craft*, 539 F.3d at 674. The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the degree of a claimant's limitations as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1).

However, the ALJ "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment[.]" SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Rather, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.* In addition, when crafting a mental RFC, the ALJ must consider the impact of both a claimant's severe and non-severe impairments. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) (citation omitted) ("An RFC determination must account for all impairments, even those that are not severe in isolation."); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Finally, Seventh Circuit caselaw "emphasizes that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported

5

by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Bruno v. Saul*, 817 F. App'x 238, 241–42 (7th Cir. 2020).

In her step two analysis, the ALJ discussed Anthony's medical records concerning his mental health. The ALJ noted that Anthony's mental status examinations were normal except for findings of anxious and depressed mood in May and June 2019. (R. 16). The ALJ also noted that Anthony was diagnosed with depressive disorder in May 2019. *Id.* The ALJ then discussed that Anthony reported anxiety with difficulty concentrating, worry, restlessness, and sleep disturbance due to chest tightness in June 2019. *Id.* At that same June 2019 medical visit, the ALJ noted that Anthony reported symptoms of mania, obsessive-compulsive disorder, post-traumatic stress disorder and depression, but his treater noted a normal mood and normal concentration. *Id.* The ALJ also discussed Anthony's mental health prescriptions of bupropion and citalopram. *Id.* The ALJ concluded that Anthony's medically determinable mental impairments of depression, anxiety disorder, and post-traumatic stress disorder did not cause more than minimal limitations in Anthony's ability to perform basic mental work activities and were therefore non-severe. *Id.* Yet, the ALJ found that his mental impairments caused mild limitations in three areas of the B criteria: 1) understanding, remembering, or applying information; (2) adapting or managing oneself; (3) and concentrating, persisting, or maintaining pace. *Id.* at 17. Subsequently, the ALJ stated that "[b]ecause the claimant's medically determinable mental impairment cause[] no more than 'mild' limitation in any of the functional areas, it is non-severe." *Id.* (citing 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1)). The ALJ then acknowledged that the limitations she identified in the "paragraph B" criteria at step two did not constitute an RFC assessment, and that such an assessment "requires a more detailed assessment[.]" *Id.* (citing SSR 96-8p). Furthermore, the ALJ

stated that the subsequent RFC assessment in the opinion would "reflect[] the degree of limitation . . . found in the 'paragraph B' mental function analysis." *Id.*

Courts in this circuit have found that such language at the end of the step two analysis causes confusion. *See Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) ("It is unclear what the ALJ meant by saying that the RFC 'reflects' his Step 2 findings concerning Ms. Muzzarelli's mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions."); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) ("Or perhaps the language at issue is mere boilerplate that the ALJ uses to conclude *any* Step Two evaluation addressing a claimant's mental impairments or limitations. Without more of an explanation as to how Ms. D.'s mental limitations factor into her RFC (if at all), we cannot trace the ALJ's path of reasoning."). In the present case, the Court cannot discern what the ALJ intended to convey when she wrote this boilerplate language at the end of her step two analysis. What is evident, however, is that the ALJ did not offer a more detailed RFC assessment that included the functional limitations she found, as she was required to do. While the Court generally reads the ALJ's decision as a whole, *see Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Winsted v. Berryhill,* 923 F.3d 472, 478 (7th Cir. 2019), the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. (R. 17). True, the Seventh Circuit has said that it is "a needless formality to have the ALJ repeat substantially similar factual analyses" at different sequential steps. *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020). Yet, in the present case, the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion

as a whole.  Ultimately, the ALJ did not account for how, if at all, Anthony's functional limitations could affect the RFC, and that is reversible error.

Notably, courts in this circuit have remanded where the ALJ used language identical to the one used at step two here and where the ALJ did not offer any analysis connecting the functional limitations found at step two and the RFC. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) (The language at the end of step two "was not enough, because the combined impact of the impairments must be considered throughout the disability determination process."); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill. Mar. 11, 2019) (remanding where "the ALJ failed to explain how his Step 2 discussion of [Plaintiff's] restrictions in [understanding, remembering or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself] [were] reflected in the RFC ."); *Lawonda P. v. Kijakazi*, No. 20-CV-2573, 2021 WL 3418847, at *5 (N.D. Ill. Aug. 5, 2021) (finding error and remanding where the ALJ failed to accommodate the claimant's mild CPP limitations in the RFC.); *Barbara B. v. Kijakazi*, No. 20 CV 547, 2021 WL 5937766, at *2 (N.D. Ill. Dec. 16, 2021) (finding error and remanding where "the ALJ found that Barbara suffer[ed] from mild CPP limitations, acknowledged that the RFC used at steps four and five would require 'a more detailed assessment' . . . [but] never delivered on these promises, however, and instead formulated an RFC that lack[ed] any mental health restrictions and failed to explain why limitations were not warranted.").

Here, the ALJ did not consider how Anthony's mild limitations in understanding, remembering, or applying information, adapting or managing oneself, and concentrating, persisting, or maintaining pace could impact his ability to sustain full-time work.  Moreover, even if the ALJ's RFC determinations were to remain unchanged after an evaluation of the functional limitations, an ALJ is still required to articulate whether her mild functional limitation findings in

the B criteria categories are consistent with her RFC analysis. Thus, because the ALJ did not include that analysis here, the ALJ failed in her duty to account for all impairments. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. Jan. 17, 2017) (emphasis in original) (Although a mild "limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC.").

The Commissioner did not directly respond to Anthony's argument on this issue in her brief. Yet, the Commissioner argues that while "a non-severe mental impairment has the potential [to cause] functional loss. . . [Anthony] must show that his non-severe mental impairments actually caused functional loss." Doc. [23] at 8. The Commissioner's position is that the ALJ "thoroughly evaluated" Anthony's mental impairments, and that it was Anthony who failed to show that his mental impairments imposed functional loss. *Id.* at 7. The Commissioner is correct that Anthony has the burden to produce evidence that supports his claims of disability. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). However, the Commissioner's response misses the point. Afterall, the ALJ determined that she had sufficient record evidence to conclude that Anthony has mild mental functioning limitations in three B criteria areas. This refutes the Commissioner's argument that Anthony failed to show that his mental impairments imposed functional loss. The issue here is that the ALJ did not account for Anthony's functional limitations in her RFC analysis at all.

The ALJ's error in the present case is particularly problematic because the VE found that Anthony could perform his previous work as an automobile salesperson and a household appliance

salesperson; jobs that The Dictionary of Occupational Titles ("DOT")[5] lists as skilled and semi-skilled employment. (R. 23, 62); *Iora P.,* 2019 WL 1112272, at *4. Importantly, "even mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work in skilled or semi-skilled positions." *Lawrence J. v. Saul*, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020); *Pamela J. B. v. Saul*, No. 19 C 6800, 2021 WL 963765, at *2–4 (N.D. Ill. Mar. 15, 2021) ("The ALJ's failure to properly explain her assessment of the combined effect of Pamela's bipolar disorder and depression with her other impairments is especially important here because her determination of non-disability was based on Pamela's ability to perform her past work as a claims clerk and a court clerk—both semi-skilled positions."). An automobile salesperson is a skilled job defined by the DOT as a person that: "[s]ells new or used automobiles, trucks, and vans on premises of vehicle sales establishment, [e]xplains features and demonstrates operation of car in showroom or on road; [s]uggests optional equipment for customer to purchase, [c]omputes and quotes sales price, including tax, trade-in allowance, license fee, and discount, and requirements for financing payment of vehicle on credit." *DOT* 273.353.010. A household appliance salesperson is a semi-skilled job defined by the DOT as a person that: "[s]ells radios, television sets, and other household appliances to customers, [e]xplains features of appliances, such as stoves, refrigerators, vacuum cleaners, and washing machines, [d]emonstrates television, radio, and phonograph sets, and [m]ay demonstrate appliances on display floor of utility company and refer interested customers to appliance dealers for purchase." *DOT* 270.357-034

Furthermore, "[t]he DOT lists a specific vocational preparation time for each described occupation" called the Specific Vocational Preparation ("SVP"). SSR 00-4p, 2000 WL 1898704

---

[5] The DOT "lists maximum requirements of occupations as generally performed." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

(Dec. 4, 2000). "Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Id.* "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn)." *Id.* The SVP number for the automobile salesperson job is a 6 and the SVP for the household appliance job is a 4. Furthermore, skilled work "may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568 and 416.968. Semi-skilled jobs "may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work." *Id.*

At his hearing, Anthony confirmed that in his automobile salesperson job, he counseled customers through their car buying process. (R. 37). Anthony also testified that in his job as a household appliances salesperson, he informed customers about video equipment, television, and home theater devices at a retail store. *Id.* at 38. The duties and responsibilities of an automobile salesperson and a household appliance have a level of intricacy that even mild functional limitations could impact Anthony's ability to perform them. The ALJ had the responsibility to minimally articulate how she reasoned through Anthony's mild functional limitations and her

11

finding that he could return to his past skilled and semi-skilled work as an automobile salesperson and a household appliances salesperson, but she failed to do so. *See Rice,* 384 F.3d at 371. Thus, the Court cannot engage in meaningful review of the ALJ's RFC finding.

Relatedly, at Anthony's hearing, the ALJ did not provide the VE with a thorough hypothetical that accounted for Anthony's mental limitations. At the hearing, the ALJ asked the VE whether an individual with the ALJ's RFC limitations who was limited to simple routine tasks would be precluded from any of Anthony's past work. (R. 61-62). Before the VE could respond, the ALJ answered her own question in the affirmative and reasoned that it was likely so because Anthony's past jobs were all at least semi-skilled. *Id.* at 62. The VE agreed. *Id.* However, an ALJ's hypothetical to the VE limiting a claimant to simple and routine tasks does not account for concentration and functioning defects. *See Martin v. Saul*, 950 F.3d 369, 373–74 (7th Cir. 2020)*; Winsted v. Berryhill,* 923 F.3d 472, 477 (7th Cir. 2019). Assuming here that the ALJ's hypothetical question to the VE intended to account for Anthony's functional limitations, the hypothetical was incomplete, and more importantly, the ALJ did not discuss her hypothetical question or the VE's answer in her RFC analysis. The ALJ altogether ignored her functional limitation findings in the RFC determination. Thus, the ALJ's failure to account for all of Anthony's functional limitations in the question posed to the VE and the ALJ's RFC assessment requires remand. *See Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (finding that the ALJ's failure to account for claimant's mild limitations in mental functioning in the RFC assessment necessitated remand). The ALJ's failure to account for Anthony's functional limitations is not harmless, because if he could not perform his past skilled or semi-skilled work, the agency's Medical Vocational Guidelines Rule 202.06 would dictate a finding of disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. On remand, the ALJ must explain what effect, if any, Anthony's mild

limitations in: 1) understanding, remembering, or applying information; (2) adapting or managing oneself; (3) and concentrating, persisting, or maintaining pace had on his RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [22] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: April 08, 2022

Sunil R. Harjani
United States Magistrate Judge